Steven M. Levitan (CA Bar No. 148716)
Steve.Levitan@wbd-us.com
Christian E. Mammen (CA Bar No. 188454)
Chris.Mammen@wbd-us.com
Aaron D. Johnson (CA Bar No. 261747)
Aaron.Johnson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, CA 94111
Tel.: 415-433-1900

Attorneys for Plaintiffs
*Shopnomix LLC and Pronomix.ai LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHOPNOMIX LLC, a Delaware limited liability company and PRONOMIX.AI LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AD.COM INTERACTIVE MEDIA, INC., a California Corporation,<br><br>Defendant. | Case No.:  **2:25-cv-10802**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED AGAINST DEFENDANT AD.COM INTERACTIVE MEDIA, INC.** |

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

# TABLE OF CONTENTS

A.    Statement of Facts ............................................................................ 1

B.    Legal Standard ................................................................................. 6

C.    Argument ........................................................................................ 8

    1.    Plaintiffs are Likely to Succeed on the Merits ............................ 8

        a.    Plaintiffs have a protectible ownership interest in the SHOPNOMIX and PRONOMIX trademarks .............................. 8

        b.    Defendant's Use of the SHOPNOMIX and PRONOMIX Trademarks are Likely to Cause Consumer Confusion ............... 10

            i.    Relatedness of Services and Similarity of Marks ............. 10

            ii.    Strength of the Marks ......................................... 12

            iii.    Marketing Channels ........................................... 12

            iv.    Evidence of Actual Confusion ............................. 13

            v.    Type of Goods and Purchaser Care ..................... 13

            vi.    Defendant's Intent .............................................. 14

            vii.    Likelihood of Expansion .................................... 15

            viii.    Balancing of the Factors .................................... 15

    2.    Defendant's Continued Use of the SHOPNOMIX and PRONOMIX Trademarks Will Cause Irreparable Harm ............................ 16

    3.    Balance of The Equities ........................................................ 17

    4.    The Public Interest .............................................................. 18

    5.    Bond .................................................................................. 19

D.    Conclusion ..................................................................................... 20

i

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
  944 F.2d 1446 (9th Cir. 1991)................................................................ 8

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  744 F.3d 595 (9th Cir. 2014)................................................................ 9

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011)............................................................ 7

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979)........................................................ 10, 13

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006)............................................................ 13

*Biomax Health Prod. LLC v. Perfectx USA*,
  No. 23-cv-02834, 2023 WL 4240144 (N.D. Cal. June 27, 2023)...................... 7, 19

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir.1999)................................................ 9, 10, 12, 14

*Century 21 Real Est. Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988)............................................................ 16

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
  No. 20-cv-04773, 2020 WL 5199434 (N.D. Cal. Aug. 17, 2020) ...................... 6, 7

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994)............................................................ 8

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003)............................................................ 19

*Doe v. San Diego Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021)............................................................ 7

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998)........................................................ 10, 12

ii
PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000)................................................................. 12, 14, 15

*Grey v. Campbell Soup Co.*,
  650 F.Supp. 1166 (C.D.Cal.1986)..................................................................... 8

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867 (9th Cir. 2014)............................................................................ 13

*Lockheed Missile & Space Co. v. Hughes Aircraft*,
  887 F. Supp. 1320 (N.D. Cal. 1995) ................................................................ 6

*Monster, Inc. v. Dolby Lab'ys Licensing Corp.*,
  920 F. Supp. 2d 1066 (N.D. Cal. 2013) ......................................................... 14

*Neighborhood Assistance Corp. v. First One Lending Corp.*,
  No. 12-cv-0463, 2013 WL 12113414 (C.D. Cal. Feb. 11, 2013) .................... 19

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011)........................................................................... 8

*Nissan Motor Co. v. Nissan Computer Corp.*,
  89 F. Supp. 2d 1154 (C.D. Cal.), *aff'd sub nom. Nissan Motor Co. v. Nissan
  Computer Corp.*, 246 F.3d 675 (9th Cir. 2000) .................................. 10, 11, 14, 15

*Ochoa v. Lopez*,
  No. 8:21-cv-00983, 2022 WL 17834345 (C.D. Cal. Dec. 21, 2022)...................... 16

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
  692 F.2d 1272 (9th Cir. 1982)........................................................................... 19

*Restoration Hardware, Inc. v. Alimia Light*,
  No. 23-cv-00948, 2023 WL 3639360 (N.D. Cal. May 24, 2023)...................... 16, 17

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*,
  No. 15-cv-08157, 2015 WL 6680807 (C.D. Cal. Oct. 19, 2015)........................... 17

*Seeno v. Discovery Builders, Inc.*,
  No. 5:23-cv-04072, 2024 WL 694490, at *4 (N.D. Cal. Feb. 20, 2024) ................. 9

*Steinway & Sons v. Robert Demars & Friends*,
  No. 80-cv-04404, 1981 WL 40530 (N.D. Cal. Jan. 28, 1981)................................ 7

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001)............................................................................. 6

iii
PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

*Tee Turtle, LLC. v. Anhui Leadershow Household Indus. Co.*,
  No. 21-cv-4703, 2021 WL 4815018 (C.D. Cal. June 17, 2021) .................. 7, 17, 18

*Triad Sys. Corp. v. Se. Exp. Co.*,
  64 F.3d 1330 (9th Cir. 1995) ....................................................................... 17

*Vision Wheel, Inc v. Vision Forged*,
  732 F. Supp. 3d 1161 (C.D. Cal. 2024) ......................................................... 8

*Warner Bros. Ent. v. Glob. Asylum, Inc.*,
  No. 12-cv-9547, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012),
  *aff'd sub nom. Warner Bros. Ent. v. Glob. Asylum, Inc.*, 544 F. App'x
  683 (9th Cir. 2013) ........................................................................ 6, 7, 18, 19

*Watec Co., Ltd. v. Liu*,
  403 F.3d 645 (9th Cir.2005) ........................................................................ 9

*Winter v. Natural Res. Def. Council*,
  555 U.S. 7 (2008) .......................................................................................... 6

Statutes

15 U.S.C. § 1116(a) ......................................................................................... 16

Rules

Fed. Rul. Civ.Proc. 65(c) ................................................................................ 19

This is a trademark infringement case that revolves around blatant and willful trademark infringement occurring at the precise time of the year—the cusp of the holiday shopping season—to cause the most damage and irreparable harm to Plaintiffs. Despite Defendant being well aware of Plaintiffs and their trademarks, through over two years of a contractual business relationship between the companies, on or before November 3, 2025, Defendant began using **identical trademarks** for **identical and nearly identical** services. This blatant conduct and purposeful timing makes this a paradigmatic case for the issuance of a temporary restraining order ("TRO") and an order to show cause ("OSC") as to why a preliminary injunction should not issue.

## A.    <u>Statement of Facts</u>

Plaintiffs are leaders in the marketing, advertising, and ecommerce fields, and provide marketing, technology and commerce services to brands, publishers, developers and other companies looking to monetize a consumer audience or reach consumers. Declaration of Geoffrey Griggs ("Griggs Decl."), ¶ 3.

Due to their innovative services and reputation for excellence, Plaintiffs have worked with, and continue to work with, some of the biggest brands, publishers, and ecommerce companies in the United States, including Nike, Amazon.com, eBay, Kohls, Walmart, Target, Best Buy, Booking.com, Expedia, and many others. *Id*., ¶ 4.

Plaintiffs market and sell their services under a number of brands, including SHOPNOMIX and PRONOMIX. *Id*., ¶ 5.

Since at least as early as August 2022, Plaintiffs have continuously marketed and provided advertising and marketing services to brands, publishers, and developers under their SHOPNOMIX trademark (the "SHOPNOMIX Mark"). *Id*., ¶ 6. Plaintiffs have continually marketed services under the SHOPNOMIX Mark via their website at Shopnomix.com. *Id*., ¶ 7.

In addition to promoting the SHOPNOMIX Mark and the services sold under

1

PLAINTIFFS' MOTION FOR TRO

that mark on their website, Plaintiffs also promote the trademark and services at industry trade shows, affiliate conferences, and a number of retail, advertising, and finance networking conventions. *Id.*, ¶ 8.

One of the users of Plaintiffs' services was Defendant. Defendant and Shopnomix LLC entered into an Advertising Services and Search Services Syndication Agreement on or around November 15, 2022 and a Listings Distribution Agreement on or around October 1, 2023. *Id.*, ¶ 9. The SHOPNOMIX trademark and the connected services were frequently used and referenced in the agreements. *Id.*

As a result of Plaintiffs' marketing of the SHOPNOMIX services, and providing the SHOPNOMIX services to customers, consumers and professionals within the advertising, marketing, and ecommerce industries have come to identify the SHOPNOMIX Mark, and advertising, marketing, and technology services sold under the SHOPNOMIX Mark, exclusively with the high-quality services of Plaintiffs. *Id.*, ¶ 10.

Since at least as early as December 2024, Plaintiffs have continuously provided advertising and technology services to brands, merchants, and developers under their PRONOMIX trademark (the "PRONOMIX Mark"). *Id.*, ¶ 11. Plaintiffs have continuously marketed services under the PRONOMIX Mark via its website at Pronomix.ai. *Id.*, ¶ 12.

In addition to promoting the PRONOMIX Mark and the services sold under that mark on their website, Plaintiffs also promote the trademark and services through industry trade shows and direct outreach with companies in the advertising and marketing industries. *Id.*, ¶ 13. One of the companies to which Plaintiffs directly promoted the PRONOMIX Mark and services was Defendant, via direct messages to Defendant's CEO in February 2025. *Id.*

Plaintiffs have sold services under the PRONOMIX Mark to many leading brands, ecommerce platforms, and other merchants in the United States. *Id.*, ¶ 14.

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

As a result of Plaintiffs' marketing of services under the PRONOMIX Mark, and Plaintiffs providing the advertising and technology services to customers under the PRONOMIX Mark, consumers and professionals within the advertising, marketing, and ecommerce industries have come to identify the PRONOMIX Mark, and advertising and technology services sold under the PRONOMIX Mark, exclusively with the high-quality services of Plaintiffs. *Id*., ¶ 15.

On or about November 4, 2025, Plaintiffs learned that Defendant began using the identical SHOPNOMIX and PRONOMIX trademarks to market and sell services identical and/or substantially similar to the services Plaintiffs sell under the SHOPNOMIX and PRONOMIX trademarks. *Id*., ¶ 16.  Plaintiffs never authorized Defendant to use the SHOPNOMIX or PRONOMIX trademarks for Defendant's services, or any trademarks similar to those marks. *Id*.

Because Defendant was well aware of Plaintiffs and their valuable SHOPNOMIX and PRONOMIX trademarks at the time Defendant began such use, Defendant can have no other reason for using identical trademarks for identical services other than to attempt to divert consumers from Plaintiffs' genuine services under the SHOPNOMIX Mark and the PRONOMIX Mark, and to pass off for commercial gain the services Defendant is offering as genuine services from Plaintiffs, which they are not.

On its website at www.AdMedia.com/shopnomix, Defendant blatantly and prominently uses the identical SHOPNOMIX trademark to promote "Search Advertising Solutions" that "seamlessly connect your brand with high-intent audiences in real time" — services that are substantially similar to, and compete with, the high-quality advertising and commerce services and technology that Plaintiffs have been selling under their SHOPNOMIX trademark for years. *Id*., ¶ 17; Declaration of Aaron D. Johnson ("Johnson Decl."), ¶ 3, Exhibit A.

Reproduced below is a true and accurate screenshot of the webpage at

3

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

www.AdMedia.com/shopnomix, showing Defendant's prominent use of the



SHOPNOMIX trademark to market and sell its services.  Johnson Decl., ¶ 3.

On its website at www.AdMedia.com/pronomix, Defendant blatantly and prominently uses the identical PRONOMIX trademark to promote its "Programmatic Performance Platform" services – services that are substantially similar to, and compete with, the high quality commerce platform and services (also called a "Programmatic Performance Platform") that Plaintiffs have been selling under their PRONOMIX Mark.  Griggs Decl., ¶ 18; Johnson Decl., ¶ 4, Exhibit B.

Reproduced below is a true and accurate screenshot of the webpage at www.AdMedia.com/pronomix, showing Defendant's prominent use of the PRONOMIX trademark to market and sell its services.  Johnson Decl., ¶ 4.

4

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO



On or around October 30, 2025, Defendant acquired and/or registered the domain name "Pronomix.com" (the "Infringing Domain") and is using the Infringing Domain to forward to Defendant's website at www.AdMedia.com/pronomix, where Defendant sells services that are substantially similar to, and compete with, the services Plaintiffs have been selling under their PRONOMIX Mark.  Griggs Decl., ¶ 18.

This blatant infringement has already resulted in confusion.  Plaintiffs have already received at least one communication from a member of the advertising industry who told Plaintiffs that Defendant's infringement resulted in their questioning whether Plaintiffs' services were owned by and/or connected with Defendant.  Neither is the case.  *Id.*, ¶ 19.

In addition to its infringing use of the SHOPNOMIX and PRONOMIX trademarks, Defendants have applied to register three applications for the "SHOPNOMIX", "PRONOMIX", and "PRONOMIX.COM" trademarks.  Johnson Decl., ¶ 5.  These applications are based on false statements to the United States Patent and Trademark Office (USPTO) claiming that Defendant knows of no company using the PRONOMIX and SHOPNOMIX trademarks (despite Defendant being aware of

5

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

Plaintiffs' prior use of the trademarks).  *Id.*, ¶ 6.  Defendant knew these statements to be false when it made them to the USPTO.

On November 6, 2025, Plaintiffs sent a cease-and-desist letter to Defendant, which, among other items, demanded the immediate cessation of Defendant's infringing behavior. *Id.*, ¶ 7.  The letter was sent via both FedEx and email. *Id.*. Despite the cease-and-desist letter, Defendant's infringement of the SHOPNOMIX and PRONOMIX Marks continues.  *Id.*

In the present action, Plaintiffs seek relief via the Complaint, whose first five counts allege trademark infringement and unfair competition under the Lanham Act, California state law, and common law due to Defendant's infringing use of the SHOPNOMIX and PRONOMIX trademarks.

**B.    <u>Legal Standard</u>**

Interim relief such as a TRO or a preliminary injunction is appropriate after an evaluation of relevant factors, which are evaluated on a sliding scale.  "The standard for issuing a TRO is identical to the standard for a preliminary injunction." *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 5:20-cv-04773, 2020 WL 5199434 at *6 (N.D. Cal. Aug. 17, 2020) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)). Under the applicable multi-variable standard, interim relief is warranted where the movant demonstrates "(1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest." *Warner Bros. Ent. v. Glob. Asylum, Inc.*, 2012 WL 6951315, at *2 (C.D. Cal. Dec. 10, 2012), *aff'd sub nom. Warner Bros. Ent. v. Glob. Asylum, Inc.*, 544 F. App'x 683 (9th Cir. 2013) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)).

In the applicable "'sliding scale' analysis in preliminary injunction inquiries . . . . 'the elements of the preliminary injunction test are balanced, so that a stronger

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

showing of one element may offset a weaker showing of another.'" *Id.* (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). *See also Biomax Health Prod. LLC v. Perfectx USA*, No. 23-cv-02834, 2023 WL 4240144, at *2 (N.D. Cal. June 27, 2023) (citing *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021)).

Courts within the Ninth Circuit have held that temporary restraining orders and preliminary injunctions are particularly appropriate in trademark infringement cases, as they can reduce the irreparable harm to a trademark or brand. *See, e.g., Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, 2020 WL 5199434, at *6 (N.D. Cal. Aug. 17, 2020) ("Preliminary injunctions are routinely granted in cases involving trademark infringement. The principle 'that trademark infringement causes irreparable injury and necessitates immediate injunctive relief' is well settled and 'is universally recognized in the courts of [the Ninth] circuit.'" (quoting *Steinway & Sons v. Robert Demars & Friends*, No. 80-cv-04404, 1981 WL 40530, *7 (N.D. Cal. Jan. 28, 1981))).

There are a number of examples where this Court has granted a TRO based on such trademark infringement claims. For example, In *Tee Turtle, LLC. v. Anhui Leadershow Household Indus. Co.*, No. 21-cv-4703, 2021 WL 4815018 (C.D. Cal. June 17, 2021), this Court granted a TRO enjoining the sale of a stuffed toy on claims of trade dress infringement and other allegations, in part because "the only hardship that the defendant[s] will suffer is lost profits from an activity which has been shown likely to be infringing . . . [while] Plaintiff, on the other hand, would be harmed from diminished sales and injury to its good will and reputation based on Defendants' sale of the infringing products." *Id.* at *5 (cleaned up). And in *Warner Bros. Ent. v. Global Asylum, Inc.*, No. 12-cv-9547, 2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) this Court granted a TRO enjoining the release of a movie on claims of trademark infringement, in part because "[Defendant's] harm is thus merely from lost profits and expenses relating to its infringing activity, and [this harm] carries little weight in the balance of equities . . . ." *Id.* at *23.

7

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

## C.   Argument

### 1.   Plaintiffs are Likely to Succeed on the Merits

Given the blatant nature of Defendant's infringing activity, Plaintiffs clearly exceed the showing of likelihood of success on the merits, regarding their first five causes of action (trademark infringement and unfair competition under the Lanham Act and California state and common law)[1]  To prevail on their claims of trademark infringement and unfair competition under the Lanham Act, Plaintiffs must prove "(1) that [they have] a protectible ownership interest in the mark and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Vision Wheel, Inc v. Vision Forged*, 732 F. Supp. 3d 1161, 1165 (C.D. Cal. 2024) (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). *See also Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D.Cal.1986) ("The tests for . . . infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same").

### a.   Plaintiffs have a protectible ownership interest in the SHOPNOMIX and PRONOMIX trademarks

Plaintiffs' SHOPNOMIX and PRONOMIX trademarks are not registered marks, but instead common law trademarks.  To establish a protectible ownership interest in a common law trademark, the owner must establish "priority of use and

---

[1] Plaintiffs' analysis focuses on the Lanham Act claims, as the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994). "Under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (internal quotation marks omitted). As such, given that Plaintiffs are likely to succeed on their federal trademark infringement and unfair competition claims, Plaintiffs are also likely to succeed on their California unfair competition and common law claims.

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

continuous use." *Seeno v. Discovery Builders, Inc.*, No. 5:23-cv-04072, 2024 WL 694490, at *4 (N.D. Cal. Feb. 20, 2024) ("a plaintiff must allege that they used the mark in commerce before the defendant and have continued use to this day."). Continuous usage requires sufficiently public usage as "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir.1999). *See also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014).

Plaintiffs here easily meet both elements for both marks. First, for the SHOPNOMIX mark, Plaintiffs have sold advertising, marketing, and technology services under that mark continuously since August 2022. Griggs Decl., ¶ 6. Since that date Plaintiffs have prominently and continuously displayed the SHOPNOMIX mark on their website, in the brand logo, on communications, at trade shows, and in contracts with vendors and customers. *Id.*, ¶¶ 6-8. The SHOPNOMIX mark was even referenced in the contracts between Plaintiff Shopnomix LLC and Defendant, signed in 2022 and 2023. *Id.*, ¶ 9. Screenshots of Plaintiffs' website from the Internet Archive and industry publications over the years reinforce Plaintiffs' continuous and conspicuous use of the SHOPNOMIX mark. Johnson Decl., ¶ 8. Conversely, Defendants began use of the SHOPNOMIX trademark no earlier than May 15, 2025. Therefore, Plaintiffs will be able to show a protectible ownership interest in the SHOPNOMIX trademark.

Second, for the PRONOMIX mark, Plaintiffs have sold advertising, merchant, and technology services under that mark continuously since December 2024. Griggs Decl., ¶ 11. Since that date Plaintiffs have prominently and continuously displayed the PRONOMIX mark on their website, in the brand logo, on communications, at trade shows, and in contracts with vendors and customers. *Id.*, ¶¶ 11-13. Conversely, Defendants only began use of the PRONOMIX trademark no earlier than October 30, 2025. Therefore, Plaintiffs will be able to show a protectible ownership interest in

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

the PRONOMIX trademark.

**b.    Defendant's Use of the SHOPNOMIX and PRONOMIX Trademarks are Likely to Cause Consumer Confusion**

The Ninth Circuit has identified eight factors courts should consider in assessing the likelihood of confusion for trademark claims: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of sight, sound, and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) the type of goods and purchaser care; (7) the defendant's intent; and (8) likelihood of expansion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). This eight-factor test is "pliant": "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

The Ninth Circuit has held that "The factors should not be rigidly weighed; we do not count beans." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  Two of the factors carry especially elevated importance: namely, **relatedness of the goods** and **similarity of the marks**. "The use of similar marks to promote similar products weighs heavily in favor of finding a likelihood of confusion." *Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1164 (C.D. Cal.), *aff'd sub nom. Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675 (9th Cir. 2000).

All eight of the factors are readily met here.

**i.    Relatedness of Services and Similarity of Marks**

In this case, the two most important factors support a likelihood of confusion, as do the six remaining factors.  First, the services provided under the marks are nearly identical, if not identical.  For the SHOPNOMIX trademark, Plaintiffs provide advertising, marketing, and technology services that help "to drive sales for brands and revenue for publishers."  Griggs Decl., ¶¶ 6-7.  Defendant claimed in its trademark application for SHOPNOMIX that it is using the mark for "Advertising

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

services," "Digital advertising services," and other related services—which directly cover the services Plaintiffs provide. Johnson Decl., ¶ 5. And Defendant's infringing use of the SHOPNOMIX trademark online claims that the services it sells under the mark are "advertising solutions . . . designed to seamlessly connect your brand with high-intent audiences in real time"—services identical to, and competing with, those that Plaintiffs offer under their SHOPNOMIX Mark. *Id.*, ¶ 3.

For the PRONOMIX Mark, Plaintiffs provide advertising, marketing, and technology services that provide a "programmatic performance platform for commerce . . . Using AI to drive better outcomes for publishers and brands." Griggs Decl., ¶¶ 11-12. Defendant claimed in its trademark application for PRONOMIX that it is using the mark for "Digital advertising services," "Marketing services rendered using artificial intelligence (AI)," and other related services—which directly cover the services Plaintiffs provide. Johnson Decl., ¶ 5. And Defendant's infringing use of the PRONOMIX trademark online claims that the services it sells under the mark are a "programmatic performance platform"—services identical to, and competing with, those that Plaintiffs offer under their PRONOMIX Mark. *Id.*, ¶ 4.

Therefore, the relatedness of the goods or services weighs heavily in favor of a likelihood of confusion.

For the similarity-of-the-marks factor, because Defendant copied Plaintiffs' SHOPNOMIX and PRONOMIX trademarks directly, the factor weighs heavily in favor of a likelihood of confusion. Defendant is using the identical SHOPNOMIX trademark and the identical PRONOMIX trademark. Defendant is also using the PRONOMIX.COM trademark, but that trademark only adds the generic ".com" identifier to Plaintiffs' existing PRONOMIX trademark and therefore is functionally and legally identical. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir.2004) ("Nissan.com" and the NISSAN trademark are "legally identical").

Therefore, the similarity of the marks factor weighs heavily in favor of a

11
PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

likelihood of confusion.

These two factors are often grouped together (sometimes with an additional factor, which varies) as being controlling in the analysis – particularly, where the factors strongly indicate infringement. *See, e.g., GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) ("The first *Sleekcraft* factor—the similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis. Together with the relatedness of the services and the use of a common marketing channel, this first factor constitutes part of the controlling troika in the *Sleekcraft* analysis." (citation omitted)); and *Dreamwerks*, 142 F.3d at 1130 ("Three of the *Sleekcraft* factors are pivotal here: (1) arbitrariness of the mark; (2) similarity of sight, sound and meaning; and (3) relatedness of the goods. The other five *Sleekcraft* factors don't provide much insight in this case and thus carry little weight.").

Not only do those two most important factors weigh heavily in favor of a likelihood of confusion, but all six other factors do as well:

### ii. Strength of the Marks

The SHOPNOMIX and PRONOMIX trademarks are very strong because they are fanciful marks that are wholly made-up terms. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 n.19 (9th Cir. 1999) (explaining that fanciful trademarks have the greatest conceptual strength). Each of the marks has no meaning the English language other than as used by Plaintiffs to refer to their services. Therefore, the strength of mark factor weighs in favor of likelihood of confusion.

### iii. Marketing Channels

Plaintiffs and Defendant both use the same marketing channels to promote their trademarks and services. Plaintiffs promote their services under the trademark at their websites at Shopnomix.com and Pronomix.ai, in addition to trade shows and direct customer contacts. Griggs Decl., ¶¶ 8, 13. As discussed above, Defendant uses the identical online marketing channel—prominently displaying the infringing

12

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

SHOPNOMIX and PRONOMIX trademarks on its website at AdMedia.com/Pronomix and AdMedia.com/Shopnomix. And Defendant has set up its recently-acquired domain Shopnomix.com to redirect traffic to Admedia.com/Shopnomix. Johnson Decl., ¶ 9. Therefore, the marketing channels factor weighs in favor of likelihood of confusion.

### iv.    Evidence of Actual Confusion

A plaintiff is not required to demonstrate actual confusion. *See, e.g., Automotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006) ("'[T]he failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.'"). However, where such confusion exists, is strongly supports a likelihood of confusion. "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 876 (9th Cir. 2014) (quoting *Sleekcraft*, 599 F.2d at 352).

Here, despite Defendant's infringing activity being public for only a few weeks or months, there has already been at least one documented instance of actual confusion. On November 4, 2025, Plaintiffs were contacted by a member of the advertising industry who said that Defendant's infringement resulted in their questioning whether Plaintiffs' services were owned by and/or connected with Defendant. Griggs Decl., ¶ 19. Therefore, the actual confusion factor weighs in favor of likelihood of confusion.

### v.    Type of Goods and Purchaser Care

In evaluating the degree of consumer care factor, "we look at the type of good or service offered and the degree of care one would expect from 'the average buyer exercising ordinary caution.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 877 (9th Cir. 2014) (quoting *Sleekcraft*, 599 F.2d at 353). It is not necessary for Plaintiffs to even address this factor in the present motion. "[W]hen the

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

products themselves are very similar, and the marks are as well, sophistication of the typical buyer alone cannot be relied on to prevent confusion." *Monster, Inc. v. Dolby Lab'ys Licensing Corp.*, 920 F. Supp. 2d 1066, 1074 (N.D. Cal. 2013) (citing cases). *See also Nissan Motor Co. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1164 (C.D. Cal.), *aff'd sub nom. Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675 (9th Cir. 2000) ("the remaining two factors, degree of care exercised by the consumer and the likelihood of expansion of product lines, are not important in the context of this case," which involved similar marks that were used on related goods).

However, even though this factor need not be addressed, the fact that actual confusion has already occurred and a member of the industry already believed that the infringing use of the SHOPNOMIX and PRONOMIX trademarks meant the companies were related and/or connected, shows that for the advertising services at issue in this case, the "sophistication of the typical buyer alone cannot be relied on to prevent confusion," just as in *Monster*. Therefore, this factor weighs in favor of a likelihood of confusion.

### vi.    Defendant's Intent

It is not necessary for Plaintiffs to prove Defendant's intent to infringe in order to demonstrate a likelihood of confusion in the marketplace. As stated by the Ninth Circuit in *GoTo.com*, "We have previously emphasized the minimal importance of the intent factor: 'Importantly, an intent to confuse customers is not required for a finding of trademark infringement.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000) (quoting *Brookfield*, 174 F.3d at 1059).

Nonetheless, there is clear evidence of Defendant's wrongful intent here. When Defendant began its infringing use of the SHOPNOMIX trademark it had been over two years since it entered into agreements with Plaintiff Shopnomix LLC – agreements that used the SHOPNOMIX trademark not only to identify Plaintiffs but also to identify the Plaintiffs' advertising and marketing services. Griggs Decl., ¶ 9. As a result, Defendant was aware of Plaintiffs' widespread and longstanding use of

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

the SHOPNOMIX trademark and its decision to use the identical trademark could be for no other reason than to divert consumers from Plaintiffs' genuine services under the SHOPNOMIX Mark and to pass off for commercial gain the services Defendant is offering as genuine services from Plaintiffs, which they are not.

Likewise, by the time Defendant began its infringing use of the PRONOMIX trademark not only had it had been in a business relationship with Plaintiffs for a number of years, but its CEO had been directly told about Plaintiffs' PRONOMIX Mark and services. Defendant's website promoting the PRONOMIX trademark also uses many terms and phrases that are identical to those on Plaintiffs' pre-existing PRONOMIX website. Griggs Decl., ¶¶ 11-12 and Johnson Decl., ¶ 4. As a result, Defendant's decision to use the identical trademark could be for no other reason than to divert consumers from Plaintiffs' genuine services under the PRONOMIX Mark and to pass off for commercial gain the services Defendant is offering as genuine services from Plaintiffs, which they are not.

Therefore, this factor weighs in favor of a likelihood of confusion.

### vii.    Likelihood of Expansion

The likelihood of product expansion factor is inapplicable here, because Defendant is already marketing and selling the exact same type of services that Plaintiffs sell. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) ("Because Disney and GoTo compete with one another by providing similar Internet search engines, we decline to evaluate the issue of whether there is a likelihood of expansion of their product lines."). *See also Nissan Motor*, 89 F. Supp. 2d at 1164 ("the remaining two factors, degree of care exercised by the consumer and the likelihood of expansion of product lines, are not important in the context of this case," which involved similar marks that were used on related goods).

### viii.    Balancing of the Factors

Per the discussion above, Plaintiffs vastly surpass the required showing for a likelihood of success on the merits. That the two most important factors – similarity

15

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

of the marks and relatedness of the goods – strongly weigh in favor of confusion is itself sufficient to show a likelihood of confusion. Moreover, Plaintiffs have presented evidence of actual confusion, and the remaining factors also weigh in favor of a likelihood of confusion.

As shown in the discussion below, in trademark infringement cases, the showing regarding the merits inherently establishes the remaining elements for interim relief.

**2.     Defendant's Continued Use of the SHOPNOMIX and PRONOMIX Trademarks Will Cause Irreparable Harm**

Pursuant to the Trademark Modernization Act of 2020, 15 U.S.C. § 1116(a), there is a presumption of irreparable harm based on the likelihood of success of a trademark infringement claim on the merits. The presumption applies at all stages in the litigation, including issuance of a permanent injunction or issuance of interim relief – i.e., a TRO or preliminary injunction. *See, e.g., Ochoa v. Lopez*, No. 8:21-cv-00983, 2022 WL 17834345, at *2 (C.D. Cal. Dec. 21, 2022) ("In cases of trademark infringement, the party seeking injunctive relief 'shall be entitled to a rebuttable presumption of irreparable harm upon a finding' of infringement.") (quoting 15 U.S.C. § 1116(a)) (issuing permanent injunction); *Restoration Hardware, Inc. v. Alimia Light*, No. 23-cv-00948, 2023 WL 3639360, at *2 (N.D. Cal. May 24, 2023) (in issuing a TRO and OSC regarding preliminary injunction, the court explained "since the Court has found that Plaintiffs are likely to prevail on the trademark infringement claim, they are entitled to a presumption of irreparable harm under the Trademark Modernization Act of 2020.").

By its very nature, trademark infringement causes irreparable harm. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). *See also Restoration Hardware*, 2023 WL 3639360, at *2 ("the loss of control

over business reputation and potential damage to goodwill constitutes an irreparable injury.").

Therefore, because Plaintiffs have shown that all of the likelihood of confusion factors weigh in favor of confusion, they have shown irreparable harm. Additionally, Defendants' infringement has occurred right before the start of the winter holiday shopping season in the United States – a particularly valuable and lucrative time for marketing and advertising services. Having blatant infringement of two important trademarks, and the resulting consumer confusion, would irreparably harm Plaintiffs during this important season.

### 3.    Balance of The Equities

A TRO and preliminary injunction will impose no legally cognizable hardship on Defendant. Therefore, the balance of the equities favors Plaintiffs, under established precedent in trademark infringement cases. "[W]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, [a balancing of the equities] argument in defense 'merits little equitable consideration.'" *Restoration Hardware*, 2023 WL 3639360, at *2 (quoting *Triad Sys. Corp. v. Se. Exp. Co.,* 64 F.3d 1330, 1338 (9th Cir. 1995). Any hardship on Defendant from the imposition of a temporary restraining order would be the result of its own infringement. And as long as Defendant continues to market and sell services under the infringing trademarks, Plaintiffs remain at risk of damage to their reputation and goodwill. *See SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. 15-cv-08157, 2015 WL 6680807, at *9 (C.D. Cal. Oct. 19, 2015) ("[W]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, [a balancing of the equities] argument in defense merits little equitable consideration.") (citations omitted).

This Court has previously held that the balance of equities favors granting a TRO in trademark infringement cases that involved greater burdens on the Defendants than are present here. *See, e.g., Tee Turtle, LLC.,* 2021 WL 4815018 at *5 and *Warner*

17

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

*Bros. Ent.*, 2012 WL 6951315 at *5. Here, Plaintiffs are merely asking for an order that enjoins Defendant from using two trademarks which appear to only be used online. Defendant would still be able to use all of the non-infringing trademarks it previously used and continues to use. Removing the infringing uses would be simple, cheap, and a low burden to Defendant.

In *Tee Turtle, LLC*, this Court granted a TRO enjoining the sale of a stuffed toy on claims of trade dress infringement and other allegations, in part because "the only hardship that the defendant[s] will suffer is lost profits from an activity which has been shown likely to be infringing . . . [while] Plaintiff, on the other hand, would be harmed from diminished sales and injury to its good will and reputation based on Defendants' sale of the infringing products." *Tee Turtle, LLC.*, 2021 WL 4815018 at *5 (cleaned up). Prohibiting the sale of physical toys that have already been created is far more of a burden than changing a few webpages and a domain name. And yet even in that case this Court held that where there is a likelihood of success on a trademark infringement claim the equities favored a TRO.

In *Warner Bros. Ent.*, this Court granted a TRO enjoining the release of a movie even after DVD cases were already mailed out on claims of trademark infringement, in part because "[Defendant's] harm is thus merely from lost profits and expenses relating to its infringing activity, and [this harm] carries little weight in the balance of equities . . . ." *Warner Bros. Ent.*, 2012 WL 6951315 at *5. Prohibiting the distribution of a movie, when media cases containing the movie had already been created, is a far bigger burden than changing a few webpages and a domain name. And yet even in that case this Court held that where there is a likelihood of success on a trademark infringement claim the equities favored a TRO.

### 4. The Public Interest

In trademark infringement cases, "[t]he public interest favors a temporary restraining order. 'In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

infringement.'" *Biomax Health Prod. LLC v. Perfectx USA*, 2023 WL 4240144, at *3 (N.D. Cal. June 27, 2023) (quoting *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982)).

Here, it is in the public interest to enjoin Defendant's infringing conduct for several reasons. Absent an injunction, consumers will be duped into purchasing services from Defendant believing them to be sponsored by, or associated with, Plaintiffs. Public policy strongly supports shutting down infringers to protect end consumers. *Neighborhood Assistance Corp. v. First One Lending Corp.*, No. 12-cv-0463, 2013 WL 12113414, at *5 (C.D. Cal. Feb. 11, 2013). As this Court has stated, "In trademark cases, the public interest is the public's right not to be deceived or confused. Indeed, the most basic public interest at stake in all Lanham Act cases [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy." *Warner Bros. Ent.*, 2012 WL 6951315, at *23 (citation and internal quotation marks omitted).

Here, due to the blatant trademark infringement from Defendant and its use of identical trademark for identical or nearly identical services, it is in the public interest to issue a TRO in order to stop the consumer confusion likely from Defendant's use of the infringing trademark.

### 5. Bond

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. F.R.C.P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond . . . and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citation omitted). Because of the blatant and unequivocal nature of Defendant's infringement, Plaintiffs respectfully request that this Court forego the requirement of a bond.

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO

## D.    <u>Conclusion</u>

For the foregoing reasons, Plaintiffs Shopnomix LLC and Pronomix.ai LLC respectfully request that this Court grant their application for a temporary restraining order and an order to show cause why a preliminary injunction should issue ordering Defendant to cease use of the SHOPNOMIX and PRONOMICS trademarks, or any other trademark owns by Plaintiffs or similar to trademarks owned by Plaintiffs.  The specific terms of the proposed TRO and OSC are set forth in the concurrently-submitted Proposed Order.

Respectfully submitted,

Date: November 11, 2025          By:/s/Christian E. Mammen

Steven M. Levitan (CA Bar No. 148716)
Steve.Levitan@wbd-us.com
Christian E. Mammen (CA Bar No. 188454)
Chris.Mammen@wbd-us.com
Aaron D. Johnson (CA Bar No. 261747)
Aaron.Johnson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, CA 94111
Tel.: 415-433-1900
Fax: 415-433-5530

Attorneys for Plaintiffs
*Shopnomix LLC and Pronomix.ai LLC*

20

PLAINTIFFS' MEMO IN SUPPORT OF MOTION FOR TRO