Steven M. Levitan (CA Bar No. 148716)
Steve.Levitan@wbd-us.com
Christian E. Mammen (CA Bar No. 188454)
Chris.Mammen@wbd-us.com
Aaron D. Johnson (CA Bar No. 261747)
Aaron.Johnson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, CA 94111
Tel.: 415-433-1900

*Attorneys for Plaintiffs Shopnomix LLC
and Pronomix.ai LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOPNOMIX LLC, a Delaware limited liability company and PRONOMIX.AI LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> AD.COM INTERACTIVE MEDIA, INC., a California Corporation, <br><br> Defendant. | **Case No.: 2:25-cv-10802** <br><br> **DECLARATION OF GEOFFREY GRIGGS IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE GRANTED AGAINST DEFENDANT AD.COM INTERACTIVE MEDIA, INC.** |

## DECLARATION OF GEOFFREY GRIGGS

I, Geoffrey Griggs, hereby declare and state that:

1. I am over the age of 18, have personal knowledge of all the following facts, and if called as a witness, I would competently testify thereto as follows.

2.     I am the Chief Financial Officer of both Shopnomix LLC and Pronomix.ai LLC.

3.     Shopnomix LLC and PRonomix.ai LLC (collectively, "Plaintiffs") are leaders in the marketing, advertising, and ecommerce fields, and provide marketing, technology and commerce services to brands, publishers, developers and other companies looking to monetize a consumer audience or reach consumers.

4.     Due to their innovative services and reputation for excellence, Plaintiffs have worked with, and continue to work with, some of the biggest brands, publishers, and ecommerce companies in the United States, including Nike, Amazon.com, eBay, Kohls, Walmart, Target, Best Buy, Booking.com, Expedia, and many others.

5.     Plaintiffs market and sell their services under a number of brands, including SHOPNOMIX and PRONOMIX.

6.     Since at least as early as August 2022, Plaintiffs have continuously marketed and provided advertising and marketing services to brands, publishers, and developers under their SHOPNOMIX trademark.  These services are designed to, among other things, help "drive sales for brands and revenue for publishers."

7.     Attached as **Exhibit A** is a true and accurate copy of Plaintiffs' marketing of services under the SHOPNOMIX Mark via their website at Shopnomix.com.

8.     In addition to promoting the SHOPNOMIX Mark and the services sold under that mark on their website, Plaintiffs also promote the trademark and services at industry trade shows, affiliate conferences, and a number of retail, advertising, and finance networking conventions.

9.     One of the users of Plaintiffs' services was Ad.com Interactive

Media, Inc. ("Defendant").  Defendant and Shopnomix LLC entered into an Advertising Services and Search Services Syndication Agreement on or around November 15, 2022 and a Listings Distribution Agreement on our around October 1, 2023.  The SHOPNOMIX trademark and the connected services were frequently used and referenced in the agreements.

10.    As a result of Plaintiffs' marketing of the SHOPNOMIX services, and providing the SHOPNOMIX services to customers, consumers and professionals within the advertising, marketing, and ecommerce industries have come to identify the SHOPNOMIX Mark, and advertising, marketing, and technology services sold under the SHOPNOMIX Mark, exclusively with the high-quality services of Plaintiffs.

11.    Since at least as early as December 2024, Plaintiffs have continuously provided advertising and technology services to brands, merchants, and developers under their PRONOMIX trademark.  These services are designed to, among other things, provide a "programmatic performance platform for commerce . . . Using AI to drive better outcomes for publishers and brands."

12.    Attached as **Exhibit B** is a true and accurate copy of Plaintiffs' marketing of services under the PRONOMIX Mark via their website at Pronomix.ai.

13.    In addition to promoting the PRONOMIX Mark and the services sold under that mark on their website, Plaintiffs also promote the trademark and services through industry trade shows and direct outreach with companies in the advertising and marketing industries.  One of the companies to which Plaintiffs directly promoted the PRONOMIX Mark and services was Defendant, via direct messages to Defendant's CEO in February 2025.

14.    Plaintiffs have sold services under the PRONOMIX Mark to many

leading brands, ecommerce platforms, and other merchants in the United States.

15.  As a result of Plaintiffs' marketing of services under the PRONOMIX Mark, and Plaintiffs providing the advertising and technology services to customers under the PRONOMIX Mark, consumers and professionals within the advertising, marketing, and ecommerce industries have come to identify the PRONOMIX Mark, and advertising and technology services sold under the PRONOMIX Mark, exclusively with the high-quality services of Plaintiffs.

16.  On or about November 4, 2025, Plaintiffs learned that Defendant began using the identical SHOPNOMIX and PRONOMIX trademarks to market and sell services identical and/or substantially similar to the services Plaintiffs sell under the SHOPNOMIX and PRONOMIX trademarks.  Plaintiffs never authorized Defendant to use the SHOPNOMIX or PRONOMIX trademarks for Defendant's services, or any trademarks similar to those marks. Defendants' infringement has occurred right before the start of the winter holiday shopping season in the United States – a particularly valuable and lucrative time for marketing and advertising services.

17.  Defendant's promotion of "Search Advertising Solutions" that "seamlessly connect your brand with high-intent audiences in real time" are substantially similar to, and compete with, the high-quality advertising and commerce services and technology that Plaintiffs have been selling under their SHOPNOMIX trademark for years.

18.  Defendant's promotion of "Programmatic Performance Platform" services are substantially similar to, and compete with, the high quality commerce platform and services (also called a "Programmatic Performance Platform") that Plaintiffs have been selling under their PRONOMIX Mark.

19.    On or around November 4, 2025, an employee of Plaintiffs received a communication from a member of the advertising industry who said that Defendant's infringement resulted in their questioning if Plaintiffs' services were owned and/or connected with Defendant.  Neither is the case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 10, 2025    _____

Declarant

5