Steven M. Levitan (SBN 148716)
Steve.Levitan@wbd-us.com
Christian E. Mammen (SBN 188454)
Chris.Mammen@wbd-us.com
Aaron D. Johnson (SBN 261747)
Aaron.Johnson@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2800
San Francisco, CA 94111
Tel.: 415-433-1900

Attorneys for Plaintiffs
SHOPNOMIX, LLC and PRONOMIX.AI LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHOPNOMIX LLC, a Delaware limited liability company and PRONOMIX.AI LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AD.COM INTERACTIVE MEDIA, INC., a California Corporation,<br><br>Defendant. | Case No.: 2:25-cv-10802-FLA-CTSx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE WHY DANNY BIBI AND DEFENDANT SHOULD NOT BE HELD IN CONTEMPT**<br><br>[redacted] |
| AD.COM INTERACTIVE MEDIA, INC., a California Corporation,<br><br>Counterclaimant,<br><br>v.<br><br>SHOPNOMIX LLC, a Delaware limited liability company and PRONOMIX.AI LLC, a Delaware limited liability company,<br><br>Counterclaim-Defendants. | Judge: Hon. Fernando L. Aenlle-Rocha<br><br>Complaint Filed: November 11, 2025<br><br>Defendant's Counterclaims Filed: December 15, 2025<br><br>Trial Date: June 1, 2027 |

TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. ARGUMENT ........ 7

A. A Party Should be Held in Civil Contempt When It Fails to Comply with a Court Order that is Specific and Definite ........ 7

B. Both Bibi and AdMedia Should be Held in Civil Contempt ........ 8

C. Bibi and AdMedia Should be Ordered to Pay Compensatory and Coercive Sanctions ........ 11

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Balla v. Idaho State Bd. of Corrections*,
869 F.2d 461 (9th Cir. 1989) .......... 8

*Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*,
No. C-06-04819 JCS, 2011 WL 5403453 (N.D. Cal. Nov. 8, 2011) .......... 9

*Bureau of Consumer Fin. Prot. v. Consumer Advoc. Ctr.*,
No. 19-cv-1998, 2022 WL 19875992 (C.D. Cal. Oct. 7, 2022) .......... 7

*FTC v. Productive Mktg., Inc.*,
136 F. Supp. 2d 1096 (C.D. Cal. 2001) .......... 7

*General Signal Corp. v. Donallco, Inc.*,
787 F.2d 1376 (9th Cir. 1986) .......... 8

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) .......... 7, 8

*National Labor Relations Board v. Sequoia District Council of Carpenters, AFL–CIO*,
568 F.2d 628 (9th Cir. 1977) .......... 9

*Shuffler v. Heritage Bank*,
720 F.2d 1141 (9th Cir. 1983) .......... 8

*U.S. v. United Mine Workers of America*,
330 U.S. 258 (1947) .......... 8, 12

## I. INTRODUCTION

This case involves the outrageous attempt by Defendant Ad.Com Interactive Media, Inc. ("AdMedia") to blatantly use and claim rights in the valuable trademarks owned by Plaintiffs Shopnomix, LLC and Pronomix.AI, LLC ("Plaintiffs"), despite AdMedia not only being aware of Plaintiffs' prior use of the trademarks but AdMedia engaging in a prior two-year contractual relationship with Plaintiffs in which at least one of the trademarks at issue was frequently used by both parties to expressly refer to Plaintiffs. AdMedia's bad faith attempts at infringement appear to have been driven by a desire for revenge after Plaintiffs filed a lawsuit against AdMedia alleging that AdMedia underpaid Plaintiffs during their contract.

In view of the blatant nature of AdMedia's infringement, on November 20, 2025 this Court issued a Temporary Restraining Order against AdMedia and related entities and individuals (Dkt. No. 16, the "TRO"; attached as Ex. A to the Declaration of Christian E. Mammen ("Mammen Decl.")). The TRO, which remains in effect, prohibits "Defendants and its officers, agents, servants, employees, successors, and assigns" from "Marketing, promoting, offering to sell, selling, and distributing any service or product under or bearing the trademark SHOPNOMIX or under or bearing any other trademark that is identical or confusingly similar to the SHOPNOMIX trademark;" as well as using such trademarks on websites. *Id.* at 5-6.

Despite this order from the Court, Plaintiffs recently discovered that less than two weeks after the TRO issued, AdMedia's CEO Danny Bibi ("Bibi"), on behalf of AdMedia, designed and created two websites that blatantly violate the TRO through the marketing and sale of competing services through trademarks and domain names nearly identical to those prohibited by the TRO. Bibi continued to maintain and operate those websites, both individually and on behalf of AdMedia, as well as continue to market and sell the services, for months until only shutting them down in late August 2026 after threat of an *ex parte* application to hold him in contempt.

The trademarks Bibi selected are almost comically similar to those prohibited by the TRO. Instead of "Shopnomix" he chose "Shopnomics" (which differs only in the replacement of the "x" suffix with a "cs" suffix, which sounds identical when pronounced, and looks confusingly similar since the remaining first eight letters are the same), and "Shoponomics" (which only adds a single "o" in the middle of the word between the syllables, which is easily lost both orally and visually.) There can be no other reason for his selection of these trademarks other than to get as close as possible to Plaintiffs' SHOPNOMIX trademark which this Court ordered Bibi and AdMedia not to use.

Based on information and belief, Bibi was assisted in the design and creation of the websites and the services they market by AdMedia and its employees.

Because this behavior is a breach of the clear language within the TRO, using the nearly-identical "Shopnomics" and "Shoponomics" trademarks to sell competing digital marketing and advertising services, Plaintiffs respectfully request the Court issue an Order to Show Cause as to why both Bibi and AdMedia should not be held in civil contempt for violation of the TRO. Due to Bibi's and AdMedia's history of treating legal rules with contempt, the penalty for this contempt should be significant.

## II. BACKGROUND

This case involves AdMedia's blatant attempt to infringe Plaintiffs' SHOPNOMIX and PRONOMIX trademarks. On May 15, 2025, just four days after Plaintiffs filed a lawsuit against AdMedia alleging that AdMedia underpaid Plaintiffs during their contract, AdMedia began using Plaintiffs' SHOPNOMIX trademark and filed an application at the United States Patent and Trademark Office for the SHOPNOMIX trademark. This use and application was despite AdMedia not only being aware of Plaintiffs' prior use of SHOPNOMIX but AdMedia engaging in a prior two-year contractual relationship with Plaintiffs in which the

SHOPNOMIX trademark was frequently used by both parties to expressly refer to Plaintiffs.

A few months later, on November 7, 2025, AdMedia began using Plaintiffs' PRONOMIX trademark and filed an application at the United States Patent and Trademark Office for the PRONOMIX trademark, despite again not only being aware of Plaintiffs' use of PRONOMIX, but having services sold under PRONOMIX pitched and marketed directly to AdMedia and its employees.

As soon as Plaintiffs learned of AdMedia's infringing behavior they sent a cease and desist letter to AdMedia, demanding that AdMedia stop and remove all infringing uses of the SHOPNOMIX and PRONOMIX trademarks. *Id.*, ¶ 5. AdMedia never acknowledged this letter, and its infringing use of SHOPNOMIX and PRONOMIX continued. *Id.*

Without any other recourse to stop AdMedia's infringement, on November 11, 2025 Plaintiffs filed this lawsuit, seeking an injunction prohibiting AdMedia's use of the SHOPNOMIX and PRONOMIX trademarks, damages from the infringing behavior, and other remedies. *Id.*, ¶ 6; Dkt. 1. On the same day Plaintiffs filed an application for a Temporary Restraining Order to prohibit AdMedia's infringement. Dkt. 4. A hearing for the TRO was held on November 19, 2025. Dkt. 12. The next day, on November 20, 2025, this Court issued an order granting the TRO. (Dkt. No. 16, the "TRO"; attached as Ex. A to Mammen Decl.).

The TRO clearly prohibits "Defendant and its officers, agents, servants, employees, successors, and assigns" from, among other actions:

1) "Marketing, promoting, offering to sell, selling, and distributing any service or product under or bearing the trademark SHOPNOMIX or under or bearing any other trademark that is identical or confusingly similar to the SHOPNOMIX trademark;" and
2) "us[ing] the trademarks SHOPNOMIX, PRONOMIX, and PRONOMIX.COM or any other mark that is identical or confusingly

similar to the trademarks SHOPNOMIX, PRONOMIX, and PRONOMIX.COM in association with all websites, social media accounts, domain name extensions, metatags, or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user . . . ."

TRO at 5-6.

Despite this clear language of the TRO, Defendant's CEO, Danny Bibi, [redacted] Mammen Decl., ¶ 7. Bibi testified that he:

[redacted]

Copies of the Infringing Websites are attached as **Exhibits C and D** to the Mammen Declaration, and reproduced below. *Id.*, ¶ 9.

The Shopnomics.com Website (Exhibit C)




The Shoponomics.com Website (Exhibit D)




The Infringing Websites remained live until at least as late as August 21, 2026, and continued to market and sell digital marketing and advertising services under the nearly-identical "Shopnomics" and "Shoponomics" terms. *Id.*, ¶ 10.

[redacted]

The public use of "Shopnomics" and "Shoponomics" came to Plaintiffs' attention on July 16, 2026 when AdMedia served a Notice of Intent to Serve Subpoena to Third-Party Steven Santilli, in which Request No. 10 referenced, inter alia, both of these terms. *Id.*, ¶ 12. Subsequently, on July 24, 2026, during meet-and-confer on AdMedia's requests for production, AdMedia proposed to revise one of its requests to include "AdMedia's use of any of the following marks: SHOPONOMICS, SHOPNOMICS, SHOPNOMIX, PRONOMICS, or PRONOMIX." *Id.*, ¶ 13. Plaintiffs responded on July 27, expressing concern about including SHOPONOMICS, SHOPNOMICS, and PRONOMICS as marks that had been used by AdMedia, and indicating that such use would be a violation of the TRO. *Id.*, ¶ 14. AdMedia's counsel responded on July 28, stating, "AdMedia is not to our knowledge, currently using any of those marks so there is no violation of the TRO." *Id.* at ¶ 15.

This statement was not true (or at best was calculated to mislead). [redacted]

On August 11, at an Informal Discovery Conference, Plaintiffs' counsel discussed these websites and indicated a belief that it was a violation of the TRO. *Id.*, ¶ 17. On August 20, 2026, Plaintiffs' counsel contacted AdMedia's counsel, stating an intention to file an ex parte application for an order to show cause concerning contempt, and requested a meet and confer. *Id.*, ¶ 18. The parties met and conferred on the proposed application on August 21, during which for the first time it appears the websites were removed. It was not until the following Monday, August 24, 2026, that Defendant's counsel represented that all of Defendant's use

of "Shopnomics" and "Shoponomics" had been removed. *Id.*, ¶ 19. Upon being informed of this fact, Plaintiffs agreed not to seek ex parte relief, but reserved the right to seek contempt relief via a noticed motion. *Id.*

Thus, even after Plaintiffs brought the Infringing Websites to the attention of Bibi and counsel for AdMedia, and even after Plaintiffs mentioned this use in open court, Bibi and AdMedia continued to market and sell digital marketing and advertising services under the "Shopnomics" and "Shoponomics" terms through the Infringing Websites—clear breaches of the TRO. Only when Plaintiffs threatened to file an *ex parte* application for an order to show cause were the Infringing Websites removed. This fits a pattern of action for Bibi and AdMedia, who continually flout legal rules and practice until they face imminent actual consequences. Therefore, unless the penalty for this blatant contempt of the TRO is significant, it is highly likely that Bibi and/or AdMedia will breach the TRO again.

## III. ARGUMENT

### A. A Party Should be Held in Civil Contempt When It Fails to Comply with a Court Order that is Specific and Definite

Courts have "both inherent and statutory authority to punish contempt and to coerce compliance with their orders." *Bureau of Consumer Fin. Prot. v. Consumer Advoc. Ctr.*, No. 19-cv-1998, 2022 WL 19875992, at *4 (C.D. Cal. Oct. 7, 2022). "A party may be held in civil contempt where it 'fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order].'" *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

To find a party in civil contempt for violating a court order, the moving party must establish: "(1) that [accused party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order." *In re Dual–Deck*, 10 F.3d at 695. The accused party's conduct "need

not be willful" to violate a court order, and there is "no good faith exception to the requirement of obedience"—other than one's good faith interpretation of a provision of the court's order. *Id*. The moving party must carry its burden of establishing a violation of the order by clear and convincing evidence; a preponderance of the evidence is insufficient. *Id*. Moreover, "contempt is appropriate only when a party fails to comply with a court order that is both specific and definite." *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989).

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). When imposing a coercive civil contempt sanction, a court should consider: (1) the character and magnitude of the harm from continued noncompliance; (2) the probable effectiveness of any sanctions in achieving future compliance; (3) the amount of defendant's financial resources; and (4) the willfulness of the violating party. *See U.S. v. United Mine Workers of America*, 330 U.S. 258, 303–304 (1947); *General Signal Corp.*, 787 F.2d at 1380. This is in contrast to a compensatory fine, which should be based upon the movant's actual losses suffered as a result of the violation. *Id.*; *see also Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983).

### B. Both Bibi and AdMedia Should be Held in Civil Contempt

Both Bibi and AdMedia should be held in civil contempt and ordered to pay sanctions due to their involvement with the Infringing Websites. First, the TRO covers both AdMedia and Bibi, since Bibi is an "officer" of AdMedia who had knowledge of the TRO. And when Bibi first acquired the domain names, he did so in the name of AdMedia. Courts have been clear that officers of parties can be held in contempt even if they are not named parties of the lawsuit. *Bd. of Trs. of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*, No. C-06-04819 JCS, 2011 WL 5403453, at *5 (N.D. Cal. Nov. 8, 2011) ("Although Larry Hunt is not a

named defendant in this action, he may be held liable in contempt on the basis of his position as CEO of Westech Roofing."); *National Labor Relations Board v. Sequoia District Council of Carpenters, AFL–CIO*, 568 F.2d 628, 634 (9th Cir. 1977) (holding that principal officers of a labor union could be held in contempt where only the union was named as a defendant).

Second, the TRO's prohibition against the use of trademarks "identical or confusingly similar" to Plaintiffs' SHOPNOMIX trademark is both specific and definite. It restricts the behavior of a very limited subset of entities ("Defendants and its officers, agents, servants, employees, successors, and assigns") from behavior that is simply use of three trademarks and any mark similar to those trademarks ("the trademarks SHOPNOMIX, PRONOMIX, and PRONOMIX.COM or any other mark that is identical or confusingly similar to the trademarks SHOPNOMIX, PRONOMIX, and PRONOMIX.COM"). The use of "identical or confusingly similar" language in the TRO is common in orders relating to trademark infringement, as otherwise the order would be ineffective as it would be easy to change a letter or two to get around the purpose of the Order.

Third, despite this order, Bibi and AdMedia created websites that did not previously exist at domain names specifically chosen to sound and look nearly identical to the prohibited SHOPNOMIX trademark. They designed those websites to prominently use trademarks specifically chosen to sound and look nearly identical to the prohibited SHOPNOMIX trademark. And they used those websites to market and sell services that compete with Plaintiffs' services under trademarks specifically chosen to sound and look nearly identical to the prohibited SHOPNOMIX trademark. While contempt does not have to be willful, here it is. Both Bibi and AdMedia took affirmative steps to use similar sounding trademarks in connection with brand new domain names, websites, and services. And when [redacted] he did so

intentionally and willfully to market and sell nearly identical services under nearly identical trademarks.

Fourth, the trademarks Bibi selected are almost comically similar to those prohibited by the TRO. Instead of "Shopnomix" he chose "Shopnomics" (which differs only in the replacement of the "x" suffix with a "cs" suffix, which sounds identical when pronounced and looks confusingly similar since the remaining first eight letters are the same), and "Shoponomics" (which only adds a single "o" in the middle of the word between the syllables, which is easily lost in both spelling and pronunciation.) There can be no other reason for the selection of these trademarks other than to get as close as possible to the SHOPNOMIX trademark prohibited by the TRO.

And fifth, this breach of the TRO has been shown by Plaintiffs by clear and convincing evidence. The websites are attached as Exhibits C, D and E of the Mammen Declaration, and clearly show use of the "Shopnomics" and "Shoponomics" terms. Mammen Declaration, ¶¶ 9-10. The New Mexico corporate entity's details are of public record and show a formation on December 8, 2025 (just over two weeks after the entry of the TRO). *Id.*, ¶ 16. [redacted] It would be difficult for evidence of contempt to be any clearer.

Therefore, both Bibi and AdMedia should be held in civil contempt and ordered to pay sanctions due to their involvement with the Infringing Websites.

### C. Bibi and AdMedia Should be Ordered to Pay Compensatory and Coercive Sanctions

As described above, both Bibi and AdMedia should be held in civil contempt for their involvement in the creation and use of the Infringing Websites. Due to this contempt, Bibi and AdMedia should be ordered to pay both compensatory and coercive sanctions.

A compensatory sanction "should be based upon the movant's actual losses suffered as a result of the violation." Here, Plaintiffs have been forced to spend significant legal fees and resources to investigate the owners behind the Infringing Websites, and to confirm they are Bibi and AdMedia, in part because Bibi hid all mention of "AdMedia" from the websites, AdMedia did not produce the websites despite being responsive to document requests, and because Defendant's counsel continued to state that AdMedia was not using the "Shoponomics" and "Shopnomics" trademarks. Mammen Decl., ¶ 20. Therefore, Bibi and AdMedia should be ordered to pay to Plaintiffs all costs and legal fees related to that effort, including the time spent deposing Bibi on the topic, all expenses relating to investigating the Infringing Websites, and all expenses related to issuing a subpoena to GoDaddy.com. Bibi and AdMedia should also be ordered to transfer all control of the "Shopnomics.com" and "Shoponomics.com" domain names to Plaintiffs.

For coercive sanctions, a court should consider: (1) the character and magnitude of the harm from continued noncompliance; (2) the probable effectiveness of any sanctions in achieving future compliance; (3) the amount of defendant's financial resources; and (4) the willfulness of the violating party. *U.S. v. United Mine Workers of America*, 330 U.S. at 303–304. As explained in multiple filings in this litigation, both Bibi and AdMedia have a long history of trademark infringement, typosquatting, and flouting legal rules and court orders. (*See, e.g.,* Dkt. Nos. 35 and 73). They have forged documents, lied to the USPTO, and submitted false declarations to this Court. *Id*.

In the complaint for *Yahoo Ad Tech LLC v. Ad.Com Interactive Media, Inc. and Danny Bibi*, Case No. 26-cv-04861 (S.D.N.Y. June 9, 2026) (Mammen Decl. ¶ 21), Yahoo alleges a "brazen scheme of forgery and lies" to forge a Yahoo officer's signature on a purported assignment of a Yahoo trademark, and filing that forged document with the USPTO in order to transfer Yahoo's trademark to AdMedia. (*Yahoo* Complaint, Dkt. No. 1 at ¶¶ 1-8.) Subsequently, the *Yahoo* complaint alleges AdMedia and Bibi used the fraudulently transferred trademark registration as the basis to claim and file additional related trademark applications. (*E.g., id.* ¶ 61.) Yahoo further collects and describes what it characterizes as "AdMedia's and Mr. Bibi's established pattern of fraudulent and deceptive conduct in domain name disputes and other legal proceedings," *id.* ¶ 64, listing several other proceedings. Yahoo's allegations are quoted below:

> In 2020, a World Intellectual Property Organization ("WIPO") arbitration panel found that AdMedia, acting through its affiliate CheapStuff, Inc. and represented by AdMedia's in-house counsel Robert Bass, had submitted a Uniform Domain-Name Dispute-Resolution Policy (UDRP) complaint containing false statements and fabricated evidence in an attempt to hijack the domain name from its lawful owner. *See Cheapstuff, Inc. v. Admin. Domain / NG9 Communications Pvt. Ltd.*, Case No. D2020-1354 (WIPO July 14, 2020).
>
> In that proceeding, the WIPO panel declared that AdMedia's complaint "was brought in bad faith and constitutes an abuse of the administrative proceeding," and found that the complaint was "brought with disregard for the truth, and contains false statements and evidence designed to mislead the Panel." The panel specifically noted that AdMedia's representative had submitted a purported invoice from the domain registrar that appeared to show that the domain name had been renewed on April 22, 2020. In fact, the domain name's renewal deadline had passed months earlier, the redemption grace period had expired on March 8, 2020, and the respondent had already acquired the domain name at auction on the same date—meaning that no legitimate renewal was possible at the time the invoice was dated. The panel found that AdMedia had submitted this evidence as part of a scheme to create a

false narrative of continued ownership and to mislead the panel into ordering transfer of a domain that AdMedia had lost.

The WIPO panel further found that AdMedia had submitted a fabricated email purporting to show that the respondent allegedly demanded $150,000 for the domain name. The respondent denied sending the email and asserted that AdMedia had fabricated it—specifically, that AdMedia had written the purported "reply" itself to manufacture evidence that the respondent was attempting to extort AdMedia. After careful review of the emails, the panel found AdMedia's account not credible and concluded that no such offer was ever made by the respondent. The panel noted that the respondent "may have reason to report Complainant's representative who certified the Complaint to the appropriate (e.g., bar association or otherwise) authorities."

In 2016, a National Arbitration Forum panel found that Mr. Bibi, as CEO of AdMedia, had registered and used a domain name in bad faith by typosquatting on Oracle International Corporation's famous ORACLE trademark. *See Oracle International Corporation v. Danny B / Admedia*, Case No FA1605001674542 (FORUM June 27, 2016). The panel found that the domain had been used for distributing malware, redirecting to pornographic websites, and advertising competing products. The panel ordered the domain transferred to Oracle. The panel further found that Mr. Bibi had registered over four hundred other domains which appeared to typosquat on other valid domain names and trademarks.

In addition, Mr. Bibi and AdMedia were defendants in adversary proceedings brought by the Chapter 7 Trustee in the bankruptcy case of Mainstream Advertising, Inc. (*In re Mainstream Advertising*, C.D. Cal. Case No. 1:17-bk-12980-MT; *Goldman v. Bibi et al.*, Adv. No. 1:20-ap-01027, filed Mar. 5, 2020). In that proceeding, the Trustee alleged that Mr. Bibi, while serving as a de facto officer of Mainstream, directed and caused Mainstream to transfer over $571,000 in monetary assets and proprietary customer information to Monetize.com, Inc. and Ad.com Interactive Media, Inc., entities Mr. Bibi owned and controlled, with actual intent to hinder, delay, or defraud Mainstream's creditors. The Trustee further alleged that Mr. Bibi provided testimony under penalty of perjury that he knew or should have known was materially false, misleading, or incomplete regarding his role at Mainstream, and that he actively frustrated the Trustee's administration of the estate by failing to appear for examinations, failing to turn over documents, and filing pleadings containing materially false information. The Trustee sought avoidance of the fraudulent transfers, breach of fiduciary duty damages,

> and punitive damages, alleging that the defendants' conduct was "willful, wanton, malicious, oppressive, outrageous and fraudulent." The adversary proceeding was resolved by court-approved settlement in 2024 and dismissed with prejudice on January 22, 2025.
>
> In 2021, Engage BDR, LLC filed a lawsuit against AdMedia, Monetize.com, Inc., and Danny Bibi in Los Angeles Superior Court alleging, among other claims, unfair and fraudulent business practices and abuse of process. *See Engage BDR, LLC v. Ad.com Interactive Media, Inc. et al.*, Case No. 21 STCV23369 (Cal. Super. Ct., L.A. Cnty., filed June 22, 2021). The Engage BDR complaint alleges that Mr. Bibi, as CEO of both AdMedia and Monetize.com, orchestrated the fabrication of a "Master Services Agreement" and an addendum by transferring the signature block of Engage's principal from a legitimate document onto the fabricated agreements … A Certified Questioned Document Examiner confirmed that the signatures on the fabricated agreements were not genuine and had been "transferred from another document." According to the complaint, Mr. Bibi and AdMedia then used the falsified documents as the basis for a lawsuit against Engage to coerce payment on claims that had already been released in a prior settlement agreement between the parties. …

(*Yahoo* Complaint, Dkt. No. 1 at ¶¶ 65-68, 70-71.) The *Yahoo* complaint also describes this Action and the fraudulent registration of infringing trademarks using the names of Plaintiffs Shopnomix and Pronomix.ai. (*Id.* ¶ 69.)

Remarkably, Yahoo's research into Mr. Bibi's prior misdeeds did not include everything. Additional research has discovered at least one other case involving his misconduct and apparently forged documents. *See Microsoft Corp v. Daniel Khoshnood, et al.*, C.D. Cal. Case No. 03-cv-4269-R-VBK.[1] Judgment of $3.95 million and permanent injunction was entered against Khoshnood and several of his companies for violation of the Lanham Act and anti-cybersquatting statutes. (Dkt. Nos. 164, 125.) In the post-trial proceedings, an issue arose concerning "forgery of purported declaration of Janella Klawitter, submitted by defendants in support of

[1] Danny Bibi was formerly known as Daniel Khoshnood. He has litigated under both names as well as other aliases.

their motion for relief from judgment," (Dkt. No. 150) and that issue was referred to the US Attorney's office. *Id.*

Therefore, any coercive sanction against Bibi and AdMedia needs to be significant in order to achieve future compliance. If the sanction is a mere slap on the wrist, it is likely that Bibi and/or AdMedia will simply breach the TRO again.

Second, it is clear that both Bibi and AdMedia have significant financial resources. According to publicly available information, AdMedia has over $81 million in annual revenue, 210 employees, and has some of the largest companies in the world as its clients. Mammen Decl., ¶ 22. And third, as described above, Bibi's testimony proves that the breaching behavior was knowing and willful.

Therefore, for the coercive sanctions to have effect, Plaintiffs respectfully request that the fine be at least **$50,000**. Any less, and Bibi and/or AdMedia are likely to breach the Court's order again.

## IV. CONCLUSION

Bibi and AdMedia willfully and knowingly violated the TRO through their creation and maintenance of websites at "Shopnomics.com" and "Shoponomics.com", and their marketing and sale of competing services under the "Shopnomics" and "Shoponomics" trademarks – trademarks expressly created to flout the Court's order by sounding and appearing as close as possible to the prohibited SHOPNOMIX trademark. Therefore, this Court should issue an order to show cause as to why Bibi and AdMedia should not be held in civil contempt, and ordered to pay both compensatory and coercive sanctions.

Respectfully submitted,

Date: August 28, 2026 By: */s/Christian E. Mammen*
Christian E. Mammen

Steven M. Levitan (SBN 148716)
Christian E. Mammen (SBN 188454)

Aaron D. Johnson (SBN 261747)
**WOMBLE BOND DICKINSON (US) LLP**

Attorneys for Plaintiffs
Shopnomix, LLC and Pronomix.AI LLC

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs Shopnomix, LLC and Pronomix.AI LLC, certifies that this brief contains 5,082 words, which:

__ complies with the word limit of L.R. 11-6.1

**X** complies with the word limit set by Judge Aenlle-Rocha's Civil Standing Order at p.6 (C.D. Cal.) dated February 1, 2025.

Date: August 28, 2026 *By: /s/Christian E. Mammen*
Christian E. Mammen